# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| T S & C INVESTMENTS, L.L.C. | *CIVIL ACTION NO. 07-2103 |
| VS. | *JUDGE DOHERTY |
| BEUSA ENERGY, INC., ET AL | *MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

Pending before the undersigned for report and recommendation is the Motion to Dismiss with Prejudice for Failure to State a Claim on Behalf of Beusa Energy, Inc. ("Beusa"), filed on August 1, 2008 [rec. doc. 58]. Plaintiffs filed an opposition on August 21, 2008. [rec. doc. 68]. Beusa filed a reply on August 29, 2008. [rec. doc. 72]. Oral argument was held on October 15, 2008, after which the undersigned took the motion under advisement. [rec. doc. 87].

## *Background*

Plaintiffs filed this class action in the 16th Judicial District Court, Parish of St. Martin, seeking to recover damages allegedly sustained as a result of a well blowout near Interstate 10 in Iberville Parish in November, 2007. On December 5, 2007, defendants removed the action to this Court on the basis of diversity or, alternatively, federal question jurisdiction under the Class Action Fairness Act of 2005, ("CAFA") 28 U.S.C. §

1332(d).[1] Plaintiffs filed a Second Amended and Supplemental Class Action Complaint on June 11, 2008 [rec. doc. 47], prayed for damages under Louisiana law for "loss of business, economic opportunity, nuisance and mental anguish" to businesses located within the vicinity of the blowout due to the loss of vehicular traffic on Interstate Highway 10 ("I-10"), which was closed as a result of the blowout. [rec. doc. 47, ¶¶ 29, 40]. On October 8, 2008, plaintiffs filed a Third Amended and Supplemental Class Action Complaint asserting a claim pursuant to LA. CIV. CODE art. 667 for allegedly depriving plaintiffs, as neighbors of defendants, of "enjoyment of their property." [rec. doc. 85, ¶ 28.1].

By the instant Motion, the defendants contend: (1) economic damages are generally not recoverable under Louisiana law absent physical injury or property damage, and (2) accepting plaintiffs' allegations as true, plaintiffs have failed to state a claim upon which relief can be granted.

***Standard on Motion to Dismiss***

In deciding a Rule 12(b)(6) motion to dismiss, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (*citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *petition for cert. filed*, (U.S. Nov. 26, 2007) (No. 07-713)). The plaintiff must plead "enough facts to state a claim to

---

[1] By Ruling dated September 15, 2008, the undersigned found that CAFA jurisdiction existed in this case. [rec. doc. 88].

2

relief that is plausible on its face." *Id.*; *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (citation and footnote omitted).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. *Cyrio v. Hunt*, 2007 WL 2772222 at * 4 (E.D. La. Sept. 19, 2007). However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Id.* (*citing Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990)). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (*citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000)).

### *Economic Damages*

Beusa's first argument is that plaintiffs cannot recover purely economic damages where they sustained no physical damage to themselves or their property. The Louisiana Supreme Court has recognized the "general inhibition in negligence law against compensation for purely economic loss not the result of either bodily harm to the claimant or physical injury to property in which claimant has a proprietary interest."

3

*Great Southwest Fire Ins. Co. v. CNA Ins. Companies*, 557 So.2d 966, 970 (La.1990).

The Fifth Circuit has adopted this rule in the context of an unintentional maritime tort. *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020 (physical damage to proprietary interest is a prerequisite to recover for economic loss in cases of unintentional maritime tort). In support of this holding, *M/V TESTBANK* relied on the well-established rule set forth in *Robins Dry Dock v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, that a party may not recover for economic loss not associated with physical damages, stating as follows:

> *Robins* broke no new ground but instead applied a principle, then settled both in the United States and England, which refused recovery for negligent interference with "contractual rights." Stated more broadly, the prevailing rule denied a plaintiff recovery for economic loss if that loss resulted from physical damage to property in which he had no proprietary interest.

(citations omitted). *Id*. at 1022.

The rule's purpose is to prevent limitless liability for negligence and the filing of law suits of a highly speculative nature. *Akron Corp. v. M/T Cantigny,* 706 F.2d 151, 153 (5th Cir.1983) (third-parties which suffered no actual physical harm as a result of vessel's negligent grounding, which prevented other large vessels from passing through the Southwest Pass of the Mississippi River, could not recover for purely economic damages). In *Louisville and N. R. Co. v. M/V Bayou Lacombe*, 597 F.2d 469, 472 (5th Cir. 1979), the court noted that "[w]hatever the wisdom of the traditional rule of nonliability for negligent acts causing economic loss, *Robins* reflects the state of the law in this

circuit." The Louisiana Supreme Court has also adopted the *Robins* rule. *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1059 (La. 1984) (dredging contractor who negligently damaged a natural gas pipeline was not liable for economic losses incurred by pipeline owner's contract customer who had to seek and obtain gas from another source pending repair).[2]

The issue in this case is whether, under Louisiana law, the economic loss rule of nonliability for negligent acts causing economic loss is applicable where there is no contractual relationship between the parties. This question has been addressed by Judge Sullivan of the Louisiana Court of Appeal, Third Circuit, and Judge James of the United States District Court for the Western District of Louisiana, but not by the Louisiana Supreme Court. *See Martin K. Eby Const. Co., Inc v. Dallas Area Rapid Transit*, 369 F.3d 464, 468 (5th Cir. 2004) (*citing Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 406 ((5th Cir. 2004)) for the general rule that, when faced with an unsettled question of substantive state law in a diversity case, a federal court must make an "*Erie*-guess" as to how the state's highest court would answer the question).[3] Where the state's highest court

---

[2] This case was brought and decided under the maritime law.

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992) ("[I]t is the duty of the federal court to determine as best it can, what the highest court of the state would decide."). This problem also arises in cases based on federal question jurisdiction when federal law does not itself supply an independent rule of decision but instead looks to state law for the necessary rule of decision. *See* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4507, at 126 (2d ed.1996).

has not yet spoken on an issue, the federal district court may look to the state's appellate courts for guidance. *American Nat. General Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001) (*citing West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) ((stating that a decision by an intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise)); *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.,* 68 F.3d 922, 928 (5th Cir. 1995) (same).

In *Louisiana Crawfish Producers Association – West v. Amerada Hess Corporation*, 2005-1156 (La. App. 3 Cir. 7/12/06); 935 So.2d 380, the issue was whether the plaintiffs, who were commercial crawfishermen, had a Louisiana state law cause of action arising out of the alleged destruction of their fishing area due to defendants' oil-related activities. Plaintiffs alleged that defendants' dredging and pipeline activities, and/or surveying services, created spoil banks and dams which had impeded the natural flow of water in the Buffalo Cove area in St. Martin Parish, Louisiana, resulting in stagnant water which destroyed the aquatic ecosystem and eliminated or diminished their ability to catch crawfish there. Initially, plaintiffs filed suit under state law, particularly LA. CIV. CODE art. 667, then amended their petition to seek relief under both state tort and maritime law. Plaintiffs requested damages for loss of jobs, profits, wages, earning capacity, enjoyment of recreational use, inconvenience and mental distress. The trial court found that plaintiffs did not have a state law cause of action, primarily based on their

inability to demonstrate a proprietary interest in the Buffalo Cove land or the wild crawfish thereon, under the *Robins* rule.

On appeal, plaintiffs argued that they fell within the *Robins* exception afforded to commercial fisherman, citing the federal district court's ruling in *State of La. ex rel. Guste v. M/V Testbank*, 524 F.Supp. 1170, 1173 (E.D. La. 1981) (collision between two vessels and the resulting discharge of pentaclorophenol constituted a tortious invasion that interfered with the special interest of commercial fishermen to use the Mississippi River Gulf Outlet to earn their livelihood, entitling fishermen to recover the specific pecuniary losses which had been incurred). In response, the oil and gas exploration defendants, citing *Dempster v. Louis Eymard Towing Co., Inc.*, 503 So.2d 99 (La. App. 5 Cir.), *writ denied*, 505 So.2d 1136 (La. 1987), argued that fishermen did not have a cause of action for economic loss arising from the destruction of a fishing site. Judge Sullivan of the Louisiana Third Circuit agreed with defendants, distinguishing *Testbank* on the grounds that it occurred in a purely maritime setting.

Judge Sullivan found that the plaintiffs' positions in *Dempster* were more analogous to the case at hand. In *Dempster*, the plaintiff fishermen sued for economic damages, including loss of their fishing nets, catch, and future profits, sustained as a result of losing their fishing site after a barge collision which contaminated the site with debris. There, the Louisiana Fifth Circuit found that plaintiffs could not recover because they did not have a proprietary interest in the fish. In making that determination,

*Dempster*, citing the Louisiana Supreme Court's ruling in *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1061 (La.1984), reasoned as follows:

> . . . [O]ur Louisiana Supreme Court has stated that:
>
> the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to *all* persons for all damages flowing in a 'but for' sequence from the negligent conduct.
>
> Rules of conduct are designed to protect some persons under some circumstances against some risks [citations omitted]. Policy considerations determine the reach of the rule. *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1061 (La.1984)

503 So.2d at 101-102.

Relying on *Dempster*, Judge Sullivan found that since the crawfishermen did not have a proprietary interest in the cove or in the wild crawfish they sought to catch, they could not recover on their state law claims for economic damages. Based on the above, Judge Sullivan affirmed the trial court's decision granting defendants' exception of no cause of action.

Here, as in *Louisiana Crawfish Producers Association*, plaintiffs have neither a proprietary interest in the land where the well exploded, nor a contractual relationship with the defendants. At least one other Louisiana appellate court, the Fifth Circuit, has held that plaintiffs cannot recover damages for economic loss where there is no proprietary interest in the property at issue. *Dempster*, 503 S.2d. at 101. Although the Louisiana Supreme Court has not addressed this issue, these appellate court decisions are persuasive, and the parties

have cited no other persuasive authority that would indicate that the Louisiana Supreme Court would decide otherwise.

More on point with the instant case is Judge James' unpublished decision in *Robinson v. Cheetah Transportation*, 2007 WL 677245 (W.D. La. Feb. 28, 2007). There, plaintiffs filed a class action on behalf of individuals and businesses who were affected by the closure of the Columbia Bridge in Caldwell Parish after the driver of a tractor-trailer struck carrying a crane struck the bridge. Plaintiffs claim that defendants, consisting of the driver's employer, the tractor-trailer's owner, the crane owner, and the crane loader, were liable for the consequences of the bridge closure because the truck driver had a duty to avoid colliding with the bridge and, as a direct result of the crash, the bridge was closed for two days. As a result of this closure, 500 children had to walk across the bridge to get to school; many people were unable to return to work or home, or had to travel long distances to reach their destinations, and a local festival had to be cancelled, causing economic losses to businesses, fair vendors and the parish.

Judge James adopted the Report and Recommendation of Magistrate Judge Hayes, in which she applied the duty-risk analysis to find defendants were not liable for the types of damages alleged by plaintiffs.[4] In employing this analysis, she determined that the issue was:

---

[4] The duty-risk analysis Magistrate Judge Hayes cited from *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La.1992), is as follows:(1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred?(2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached?(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?, *i.e.*, Was the breach of duty the legal or proximate cause of the damage?

9

given that plaintiffs were neither involved in the accident or sustained any bodily injury or property damage as a result, whether any duty that existed on the part of these defendants could be viewed as extending to these plaintiffs. In finding that any duty owed by defendants in connection with the accident did not encompass the risk of harm alleged by plaintiffs, Magistrate Judge Hayes reasoned as follows:

> ... Even assuming that the defendants were negligent in the manner that the plaintiffs allege, adults and school children being forced walk across the bridge to work and school and a Festival occurring once a year's having to be cancelled are not the types of harm intended to be protected against by the duty to drive safely and/or to load heavy equipment properly. There is simply no ease of association between the two.
>
> Furthermore, when this Court considers, as it must, the policy implications of allowing the plaintiffs to recover, it becomes even more obvious that this case can proceed no further. Although the plaintiffs attempt to cast it as something more, the event giving rise to the plaintiffs claims was, at its core, a traffic accident. If the plaintiffs, having suffered no physical injury or property damage, are permitted to recover damages caused by a temporary road closure resulting from a traffic accident, then every individual who is prevented from getting where he or she needs to go due to a traffic accident will have a cause of action against those who caused the accident.... The courts neither desire nor are they equipped to handle the potentially limitless amount of litigation that could ensue if the plaintiffs in this case were permitted to recover. Such a ruling would truly open the floodgates of litigation in almost every traffic accident case.
>
> For the reasons stated above, the undersigned finds that there is no ease of association between the conduct complained of and the damages alleged, and that recognizing a cause of action based on the claims alleged by these plaintiffs would simply be bad policy.

(footnotes omitted). *Id.* at *6 -7.

Similarly, plaintiffs here do not allege any physical damage to their persons or property, or even that they were present at the scene of the blowout. Instead, they allege that, because of Beusa's negligence, a portion of the I-10 basin bridge was temporarily closed for repairs and, as a result, they suffered a loss of business in the interim. The undersigned agrees with Magistrate Judge Hayes that the law's protection simply does not extend so far as to hold Beusa liable for plaintiffs' economic damages. This "*Erie*-guess" is based on the decision of the intermediate Louisiana appellate courts, and the consistent application of the *Robbins Dry Dock* rule by the Louisiana Supreme Court.

Accordingly, I recommend that defendant's motion to dismiss for failure to state a claim under Louisiana tort law be **GRANTED**.

### *Liability Under Art. 667*

In the third amended and supplemental complaint, plaintiffs alleged a claim under LA. CIV. CODE art. 667, which provides as follows:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

According to the Louisiana Civil Code, words are to be taken in their ordinary meaning and understood in their normal sense in connection with the context. LA. CIV. CODE art. 11; *Succession of Doll v. Doll*, 593 So.2d 1239, 1249 (La. 1992); *Wood Marine Service, Inc. v. Board of Com'rs For East Jefferson Levee Dist.*, 653 F.Supp. 434, 445 (E.D. La.1986). In its ordinary meaning, "neighbor" is a person who lives near another. Black's Law Dictionary (8th ed. 2004). For the purpose of this case, this definition would not appear to encompass a business situated miles away which sustained no physical damage from the well blowout whatsoever.

Recently, Judge Vance addressed the definition of the word "neighbor" as used in art. 667 in *Barasich v. Columbia Gulf Transmission Co.,* 467 F.Supp.2d 676, 690 (E.D. La.2006). *Barasich* involved a class action filed by nine residents, businesses, and property owners located along 17 parishes off the Louisiana coast, who alleged that defendant oil and gas companies' activities contributed significantly to Hurricanes Katrina and Rita's destructive impact by damaging Louisiana's marshland, thereby weakening the protective barrier. Judge Vance found that art. 667 did not contemplate the relationship plaintiffs asserted of parties whose properties were hundreds of miles apart in many cases, reasoning as follows:

> If these parties could be held to be neighbors, the restrictive meaning of the statutory language would be eviscerated. Louisiana Civil Code article 11 requires courts, when interpreting the meaning of statutes, to give the words "their generally prevailing meaning." Plaintiffs have not suggested, and the Court is not aware of, any generally prevailing meaning of "neighbor" that could possibly apply to the relationship between a homeowner in Iberia Parish

12

and an exploration company that dug a canal near the mouth of the Mississippi River.... Plaintiffs' Article 667 claim fails because they do not demonstrate that the "neighbor" referred to in Article 667 could be a party whose property is physically remote from that of the defendants.

*Id*. at 690.

Similarly, in *Louisiana Crawfish Farmers*, 935 So.2d at 385, Judge Sullivan determined that plaintiffs did not have a cause of action under art. 667 as persons holding rights derived from the landowner. In support of his finding, he cited *Dumas v. Angus Chemical Co.*, 31400 (La. App. 2 Cir. 1/11/99); 728 So.2d 441, 451, which stated as follows:

> Moreover, we must also conclude that not every claimant is within the class of people to whom a duty is owed under Article 667. The term "proprietor" in Article 667 has been interpreted to apply not only to a landowner, but also to any person whose rights derive from the owner. *Inabnet v. Exxon Corp.*, 93-0681 (La.9/6/94), 642 So.2d 1243. A landowner, however, does not owe a duty under Article 667 to everyone: "Persons that do not qualify as proprietors, such as guests, contractors, and members of the public, may have a variety of remedies against a landowner under the law of delictual obligations ..., but not for violation of obligations established by Articles 667 and 668." Yiannopoulos, supra, § 44.[5]

*Dumas*, 728 So.2d at 451.

Here, some of the plaintiffs were located as far as 20 miles away from the blowout site. None of them sustained physical damage to their property as a result of the accident. Under the circumstances of this case, the undersigned finds that Beusa did not owe a duty to them under art. 667. The plaintiffs are not "neighbors" as that term is used in art. 667.

---

[5] 1 A.N. Yiannopoulos, <u>Civil Law Treatise</u>, Predial Servitudes § 51, at 143, in 4 (1997).

**CONCLUSION**

Based on the foregoing reasons, I recommend that the motion to dismiss [rec. doc. 58] be **GRANTED**, and that all claims against Beusa be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** ***DOUGLASS V. UNITED***

*SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed October 28, 2008, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE