RECEIVED

FEB - 2 2009

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TS&C INVESTMENTS, L.L.C., ET AL. | CIVIL ACTION NO. 07-2103 |
| VERSUS | JUDGE DOHERTY |
| BEUSA ENERGY, INC., ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are three Reports and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the following motions be granted and that all claims against all defendants be dismissed with prejudice: (1) "Motion to Dismiss With Prejudice for Failure to State a Claim" filed by defendant Beusa Energy, Inc. ("Beusa") [Doc. 58]; (2) "Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim on Which Relief Can Be Granted" filed by defendant Justiss Oil Company [Doc. 59]; and (3) "Rule 12(b)(6) Motion to Dismiss" filed by defendant Alliance Drilling Consultants, L.L.C.P. (Doc. 60).[1] Defendants seek the dismissal of all claims filed by plaintiffs against them for economic damages pursuant to Louisiana tort law and Article 667 of the Louisiana Civil Code following the closure of Interstate 10 after an oil well blowout in November 2007 in Iberville Parish near Interstate 10.

Plaintiffs filed objections to the Reports and Recommendation [Doc. 92], and all three defendants filed responses to the plaintiffs' objections [Docs. 93, 94, & 95]. For the following reasons, this Court AFFIRMS the findings of the magistrate judge, GRANTS the motions to dismiss, and DISMISSES WITH PREJUDICE all of plaintiffs' claims against all defendants named herein.

---

[1] The three Reports and Recommendation are located at Rec. Docs. 89, 90, and 91.

## I.    Factual Background

The factual and procedural background of this matter is set forth by the magistrate judge in his Report and Recommendation and will not be re-stated here, and in support of its Ruling this date, this Court adopts the Report and Recommendation of the magistrate judge *in toto*. For the sake of brevity and clarity, however, this Court notes the instant lawsuit is a putative class action lawsuit brought by several nominal plaintiffs, on behalf of themselves and all persons similarly situated, for damages allegedly sustained as a result of an oil well blowout in November 2007 in Iberville Parish near Interstate 10.[2] The plaintiffs assert claims for damages for loss of business, loss of economic opportunity, nuisance, and mental anguish. The magistrate judge found, and no party disputes, all categories of damages sought by plaintiffs are purely economic damages.

Although it has been framed in various ways by the parties, the principal issue before this Court is whether, under applicable law – all parties agree this Court is *Erie*-bound and Louisiana tort law applies – the "economic loss rule" barring recovery for negligent acts where there is no contractual relationship between the parties and there has been no physical damage to the plaintiffs or their property is applicable. Additionally, before this Court is the question of whether plaintiffs have a claim pursuant to Article 667 of the Louisiana Civil Code.[3] On October 28 and 29, 2008, the magistrate judge issued three Reports and Recommendation, wherein the magistrate judge concluded

---

[2] The nominal plaintiffs consist of TS&C Investments, L.L.C. and Tiger Truck Stop, Inc., representing a sub-class of all businesses that operate as a truck stop; Crawfish Town USA, Inc and MB, L.L.C., representing a sub-class of all businesses that operate as a sit-down restaurant; Meyers Family Enterprises and S&J Mini Mart, Inc, representing a sub-class of all businesses that operate as a gas station; Atchafalaya Enterprises, Ltd., representing a sub-class of all businesses that operate as a fast food restaurant; Parkers Hospitality, L.L.C., representing a sub-class of all businesses that operate as a hotel/motel; Pyramid Foods, Inc, representing a sub-class of all businesses that operate as a grocery store; and Cajun Towing and Recovery, representing itself. For convenience, all nominal plaintiffs and potential class members are collectively referred to throughout this Ruling as "plaintiffs."

[3] Article 667 of the Louisiana Civil Code is located in Book II of the Code, entitled "Things and the Different Modifications of Ownership." The analysis of an Article 667 claim, therefore, is different from the analysis employed in the realm of tort.

plaintiffs fail to state a claim under Louisiana tort law and Article 667 of the Louisiana Civil Code and, accordingly, plaintiffs' claims against all three defendants should be denied and dismissed with prejudice [Docs. 89, 90 & 91], all as more fully discussed below.

## I. Legal Analysis

### A. Standard on Rule 12(b)(6) Motion to Dismiss

The magistrate judge correctly noted the standard to be applied to defendants' motions to dismiss. In deciding a Rule 12(b)(6) motion to dismiss, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1230 (2008) and 128 S.Ct. 1231 (2008). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombley*, 127 S.Ct. at 1965 (citation and footnote omitted).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. *Cyrio v. Hunt*, 2007 WL 2772222 at * 4 (E.D. La. Sept. 19, 2007). However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Id., citing Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet,*

3

*Inc.*, 394 F.3d 285, 288 (5th Cir. 2004), *citing Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000).

## B.     Determining Louisiana Law Under *Erie*

No party disputes this case is governed by the *Erie* doctrine.[4]  In the *Erie* context, in order to determine state law, federal courts look to final decisions of the highest court of the state.  When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.  *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).  When faced with an unsettled question of substantive state law in a diversity case, a federal court must make an "*Erie*-guess" as to how the state's highest court would answer the question.  *See, e.g., Martin K. Eby Const. Co., Inc v. Dallas Area Rapid Transit*, 369 F.3d 464, 468 (5th Cir. 2004), *citing Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 406 (5th Cir. 2004).  Where the state's highest court has not yet spoken on an issue, the federal district court may look to the state's appellate courts for guidance.  *American Nat. General Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001), *citing West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (stating that a decision by an intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise); *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (accord).

---

[4] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992) ("[I]t is the duty of the federal court to determine as best it can, what the highest court of the state would decide."). This problem also arises in cases based on federal question jurisdiction when federal law does not itself supply an independent rule of decision but instead looks to state law for the necessary rule of decision. *See* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4507, at 126 (2d ed.1996).

## C.    Economic Loss Rule

In the instant case, plaintiffs – business owners along Interstate 10 whose businesses were affected by the closure of Interstate 10 as a result of the oil well blowout near Iberville Parish – seek damages from the oil company defendants for their economic losses allegedly occasioned by the closure of the interstate.[5] As the magistrate judge pointed out, the Louisiana Supreme Court has not answered the precise legal question before this Court – that is, whether the plaintiffs can recover purely economic damages when there is no physical damage or damage to property in which plaintiffs have a proprietary interest and where there is no contractual relationship between the parties – therefore, this Court must make an "*Erie* guess" as to how the Louisiana Supreme Court would answer this legal question.

The well-established general rule within common law tort, that a party may not recover for economic loss not associated with physical damages – commonly referred to as the "economic loss rule" – was first enunciated by the United States Supreme Court within the context of the general maritime law in *Robins Dry Dock v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).[6] Both

---

[5] Defendant Beusa is alleged to have received a permit to drill the well in question; it is alleged Beusa then retained Alliance to provide all initial planning, permit submission and AFE preparation for completion of the well, including, but not limited to, contractor selection, location development, setting casing and/or drilling start up work. It is further alleged Beusa retained defendant Justiss to provide all drilling operations of the well, including providing a Justiss rig to drill the well and all necessary employees. Plaintiffs allege Beusa located the drilling site of the well approximately 100 yards north of Interstate 10 in Iberville Parish. Plaintiffs contend the well blowout occurred "due to the negligent design, planning, placement, operation and/or drilling of the well by Justiss Oil Company, Inc. and/or [Alliance] Drilling Consultants, L.L.C., under the direct supervision of Beusa Energy, Inc." *See* Plaintiffs' Second Supplemental and Amending Complaint, Doc. 47, at ¶¶20-24.

[6] "Although *Robins [Dry Dock]* arose in a contractual setting, in that the charterer of a vessel was denied recovery for its loss of use after the vessel was negligently damaged by the dry dock operator, its application has not been confined to contract cases, but rather it has become 'a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability.'" *Louisiana Crawfish Producers*, 935 So.2d at 382, *citing Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir.1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

This Court notes that in *Louisiana Crawfish Producers*, both Louisiana state law and maritime claims were brought by plaintiffs. The trial court heard numerous exceptions filed by defendants and thereafter found plaintiffs

the Louisiana Supreme Court and the federal Fifth Circuit have adopted the *Robins Dry Dock* rule in the context of an unintentional *maritime* tort. *See PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1059 (La. 1984) (in suit brought and decided under maritime law, court held dredging contractor who negligently damaged a natural gas pipeline was not liable for economic losses incurred by pipeline owner's contract customer who had to seek and obtain gas from another source pending repair; recovery was not permitted "for the policy reasons . . stated in a duty-risk analysis") and *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020 (5th Cir. 1985) (physical damage to proprietary interest is a prerequisite to recover for economic loss in cases of unintentional maritime tort). As the magistrate judge noted, the rule is found within the *admiralty law*, however the rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature. *See Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir.1983). *See also PPG Industries, Inc.*, 447 So.2d at 1061-62 ("Rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks. . . . imposition of responsibility on the tortfeasor for such [economic] damages could create liability *'in an indeterminate amount for an indeterminate time to an indeterminate class'. . . . . [b]ecause the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages.'*") (internal citations omitted) (emphasis added). The rationale,

---

did not have a cause of action under state law. The trial court considered that its ruling rendered any other exceptions moot, but reserved to plaintiffs the right to proceed with any claims they may have under maritime law. It appears the only issue to be argued on appeal was whether the trial court erred in concluding plaintiffs did not have a cause of action under La.Civ.Code art. 2315 and La.Civ.Code art. 667. *See Louisiana Crawfish Producers*, 935 So.2d at 382.

Thus, the *Louisiana Crawfish Producers* addresses non-maritime claims and cites *Robins Dry Dock*, which is a maritime case. This suggests to this Court that the economic loss rule, first announced in the maritime context by the United States Supreme Court, has been incorporated by Louisiana appellate courts into the non-maritime context, as explained in greater detail later in this ruling.

thus, is not one peculiar to the unique nature of the admiralty.

The Louisiana Supreme Court however, has addressed the issue only within the *maritime context;* it has not addressed the issue in the context of the Louisiana Civil Code. However, the magistrate judge found the question has been addressed by a Louisiana Appellate Court, that is, the Louisiana Third Circuit Court of Appeal in *Louisiana Crawfish Producers Association – West v. Amerada Hess Corporation,* 935 So. 2d 380 (La. App. 3rd Cir. 2006), and by the United States Western District of Louisiana in an unpublished decision, *Robinson v. Cheetah Transportation,* 2007 WL 677245 (W.D. La. Feb. 28, 2007) (J. James). This Court is not bound by either decision, but finds both decisions illuminating in this Court's determination of how the Louisiana Supreme Court might answer the question at hand.

In *Louisiana Crawfish Producers Association,* plaintiffs sought relief under both state tort law and maritime law, as well as Article 667 of the Louisiana Civil Code. The trial court heard numerous exceptions by the defendants and found plaintiffs did not have a state law cause of action, primarily based on their inability to demonstrate a proprietary interest in the Buffalo Cove land or the wild crawfish thereon, under the rule announced in *Robins Dry Dock.* The trial court considered that its ruling rendered any other exceptions moot, but reserved to plaintiffs the right to proceed with any claims they may have under maritime law. It appears the only issue to be argued on appeal was whether the trial court erred in concluding plaintiffs did not have a cause of action under La.Civ.Code art. 2315 and La.Civ.Code art. 667. *See Louisiana Crawfish Producers,* 935 So.2d at 382.

Thus, on appeal, the issue was whether commercial crawfisherman had a Louisiana state law cause of action arising out of the alleged destruction of their fishing area due to defendants' oil-

related activities. The Third Circuit affirmed the trial court, citing *Robins Dry Dock* for the proposition that the economic rule applies in both contractual and non-contractual cases, and further relying on *Dempster v. Louis Eymard Towing Co., Inc.*, 503 So.2d 99 (La. App. 5th Cir.), *writ denied*, 505 So.2d 1136 (La. 1987), a case applying maritime law and relying on *PPG Industries*, to find plaintiff fisherman could not recover economic damages sustained as a result of the loss of their fishing site when they did not have a proprietary interest in the fishing site.[7] The *Louisiana Crawfish Producers* case however, does not analyze the issue under a duty-risk analysis, per sé.

It is not lost on this Court that in referring to *Robins Dry Dock*, and in relying on *Dempster* – both cases that apply *maritime* law – within the context of an appeal on *Louisiana law* one can argue the Louisiana Third Circuit in *Louisiana Crawfish Producers* was signaling that the economic loss rule – heretofore applied only in the *maritime* context – was being brought into and applied in the *non-maritime* context. This Court finds the foregoing provides support for this Court's conclusion that the economic loss rule applies in this case.

In *Robinson v. Cheetah Transportation*, 2007 WL 677245 (W.D. La. Feb. 28, 2007), the plaintiffs filed a class action lawsuit on behalf of individuals and businesses who were affected by the closure of the Columbia Bridge in Caldwell Parish after the driver of a tractor-trailer carrying a

---

[7] In *Dempster*, the plaintiff fishermen sued for economic damages, including loss of their fishing nets, catch, and future profits, sustained as a result of losing their fishing site after a barge collision which contaminated the site with debris. The Louisiana Fifth Circuit Court of Appeals found plaintiffs could not recover because they did not have a proprietary interest in the fish. In so holding, the Court stated:

> . . . [O]ur Louisiana Supreme Court has stated that: the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to *all* persons for all damages flowing in a 'but for' sequence from the negligent conduct. Rules of conduct are designed to protect some persons under some circumstances against some risks [citations omitted]. Policy considerations determine the reach of the rule.

*Dempster*, 503 So.2d at 101-02, *citing PPG Industries, Inc.*, 447 So. 2d at 1061.

crane struck the bridge. The Court adopted the Report and Recommendation of the magistrate judge, in which the magistrate judge employed the duty-risk analysis to find defendants were not liable. In her report, the magistrate judge observed that any duty owed by defendants in connection with the accident did not encompass the risk of harm alleged by the plaintiffs. 2007 WL 677245 at *6-7.

In the matter before this Court, the plaintiffs have filed objections to the magistrate's Report and Recommendation and contend the magistrate judge "misstated the central legal principle at issue," as he failed to employ a duty-risk analysis to determine whether plaintiffs state a claim. Rather, plaintiffs contend the magistrate judge took a common law approach to the issue and analyzed the case under "rules" set forth in prior case law not reflective of the Louisiana Civil Code or Louisiana's duty risk analysis. Plaintiffs contend under the duty-risk analysis, they are entitled to relief on their state law claims, because once defendants made a conscious decision to place the well 100 yards from Interstate 10, defendants had a duty to protect the public from the foreseeable economic injury of shutting down Interstate 10 in the event of a well blowout. Thus, plaintiffs argue because of the calculated decision by these sophisticated defendants to place the well so close to the interstate, the economic damages resulting from the well blowout are within the scope of protection afforded by the defendant's duty to ensure that Interstate 10 would not be shut down due to their negligence. Plaintiffs contend the key to the analysis is the interstate and the well's proximity thereto.

The United States Supreme Court has made clear within the context of common law tort – within the maritime law – the issue of whether a party can recover for purely economic damages when there is no physical damage or damage to property in which plaintiffs have a proprietary interest is one of policy. The two courts within Louisiana to have addressed the issue within a

9

modern context, also encompass policy determinations, however address the policy issue in different ways. In *Louisiana Crawfish Producers*, the Louisiana Third Circuit addressed the policy issue as a "rule" of damages, while in *Robinson*, the federal district court addressed the policy issue in terms of a "duty-risk" analysis. Had the Louisiana Supreme Court addressed this policy determination by way of a specific aspect or prong of the tort analysis mandated by the Louisiana Civil Code, this Court would be constrained to follow that analysis selection. However, it has not done so. Rather, the only present day Louisiana court to address this issue squarely is the Louisiana Third Circuit, which did not address the policy issue in terms of a duty-risk analysis.

Plaintiffs contend there is a Louisiana Supreme Court case directly on point with the facts of the instant case – *Pharr v. Morgan's L&TR&SS Co.*, 115 La. 138, 38 So. 943 (1905) – and argue the case supports plaintiffs' position. In *Pharr*, plaintiff was a sugar planter above Morgan City who depended on the Atchafalaya River to transport his product. Defendant constructed a railroad bridge over the river at Berwick Bay. After construction of the bridge, defendants's freight train ran into the bridge, obstructing traffic on the river. Plaintiff alleged the obstruction of the river traffic caused business loss damage to him in the form of increased costs to transport his product. Plaintiff did not allege any personal or property injury as a result of defendant's negligence.

The 1905 Louisiana Supreme Court concluded plaintiff had a cause of action for economic damages suffered regardless of the fact that the sugar planter did not suffer any personal or property injury. However, the court made a policy determination and limited the damages that were available to plaintiff. The court awarded damages for the cost of keeping an extra steamboat above the bridge in which to transport his sugar, but denied damages for the extra expense for 8 days of a steamboat, expenses for delays in running the refinery, and expenses for delays of plantation work, noting those

expenses were speculative. 115 La. 138 at 142-43. Thus, the Louisiana Supreme Court, in 1905, chose to make its policy determination within the damages prong of the tort analysis.

Although this Court considers the *Pharr* opinion, the Court concludes it is not dispositive of the issues before this Court. The *Pharr* case pre-dates both the modern duty-risk analysis under Louisiana law and the "economic loss rule" as set forth in *Robins Dry Dock*, which has been adopted by Louisiana courts within the maritime tort context, and arguably by one present-day Louisiana appellate court within the context of Louisiana law.[8] The plaintiff does not allege that any Louisiana court since 1905 has followed the *Pharr* example, and this Court notes the Court's determination in *Pharr* was factually based and one of policy.[9] The court in *Pharr* clearly struggled with the speculative nature of the plaintiff's claims for pure economic damages to the point the Court denied all but one category of such damages. Furthermore, as noted, plaintiffs have not shown that either the Louisiana Supreme Court or any other Louisiana appellate court has chosen to follow the very

---

[8] *Louisiana Crawfish Producers, supra.*

[9] At least one Louisiana appellate court has expressly rejected the edicts of the *Pharr* decision in light of the economic loss rule and *Robins Dry Dock*, again, however, ultimately within a maritime context. In *Harp v. Pine Bluff Sand and Gravel Co.*, 750 So. 2d 226, residents and business owners that used a state-owned bridge damaged by a barge collision sued the state and the owner of the tug and barges (Pine Bluff), alleging economic loss and inconvenience as a result of the bridge being closed for repairs. The defendants filed an exception of no cause of action, contending plaintiffs could not set forth a cause of action for purely economic losses in the absence of physical damage to property in which they held a proprietary interest. Although it is unclear whether the case was brought under state law, maritime law, or both, the State later filed a parallel exception which further argued that even if state law, as opposed to maritime law, were to apply to the casualty, plaintiffs could nevertheless not recover. *Harp*, 750 So.2d at 227-28.

The trial court denied the exception based on *Pharr*. *Id.* at 228. Both defendants filed supervisory writ applications. On the State's application, a three-judge panel of the Louisiana Third Circuit found the plaintiffs could not recover *under either federal maritime law or Louisiana law. Id.* On Pine Bluff's application, a five-judge panel held there was a cause of action against Pine Bluff for purely economic losses. Pine Bluff filed an application for writ of certiorari with the Louisiana Supreme Court, which remanded the case back to the Third Circuit for determination. *Id.*

On remand, the Third Circuit said it first had to determine whether maritime law or state law applied. Concluding maritime law – and not state law – applied, the court then went on to conclude that under maritime law, plaintiffs did not have a cause of action against Pine Bluff, because, pursuant to *Robins Dry Dock*, plaintiff did not represent a "sufficient proprietary interest in the damaged property itself" to warrant a cause of action. *Id.* at 229-30.

weak invitation offered in *Pharr* to permit such damages. Indeed, the *Pharr* opinion itself pivots on a policy determination, as the Louisiana Supreme Court limited the economic damages that were recoverable by the plaintiff. Since that time, there have been multiple changes to the Louisiana Civil Code and jurisprudential interpretations on the law on damages in Louisiana, adoption of the duty-risk analysis and hundreds of thousands of cases filed and disposed of in the Louisiana courts, and yet it appears no Louisiana court has chosen to follow the weak nvitation of *Pharr*. This Court also notes, throughout this evolution the Louisiana legislature has never elected to extend recovery for purely economic damages to plaintiffs situated similarly to the plaintiffs in this case. Indeed, not since the days of steamboats have such purely economic damages been permitted, albeit in a limited and factually based manner. Thus, this Court does not find *Pharr* controlling, as plaintiffs suggest.

Moreover, with respect to plaintiffs' specific argument that the magistrate judge erred in couching the issue in terms of a "damages" rule, rather than a duty risk discussion, this Court concludes whether one frames an issue of policy in terms of a "rule" of *damages* or in terms of one of the prongs within a "duty-risk" analysis is immaterial, as it remains a policy determination, one best made by the Louisiana Supreme Court pursuant to the Louisiana Civil Code. However, the Louisiana Supreme Court has not addressed either the issue of whether such recovery should be allowed, or under what analysis that determination should be couched, outside the maritime context. Nonetheless, as this Court is dealing with a policy determination, the same policy considerations would be at issue whether one finds oneself within the tort law of the admiralty or the tort law of Louisiana's Civil Code and whether one couches the analysis as a duty risk framework, or as a rule of damages. Thus, whether one couches the question within the context of whether a certain *category* of damages is allowed, or whether the *risk of harm* encompasses a particular *duty*, the

policy considerations and determination remain the same. As there is no Louisiana Supreme Court addressing this issue or mandating the nature of the analysis and no consensus among Louisiana appellate courts, this Court must make an *"Erie* guess" as to how the Louisiana Supreme Court would couch this policy issue, as well as how it would decide the issue.

This Court notes there has been a trend among both Louisiana state and federal courts not to permit the recovery of indirect economic losses caused by a negligent injury to property, both in maritime and non-maritime contexts, and in contractual and non-contractual settings. Certain of these cases couch the policy determination within the rhetoric of a duty-risk analysis; others do not. In at least two of the cases, the courts mechanically concluded the petition failed to state a cause of action. Certain of the cases cite *Robins Dry Dock* in support of their position. *See, e.g., Desormeaux v. Central Industries, Inc.*, 333 So.2d 431, 435 (La. App. 3rd Cir.) (farmer who had contract with his father whereby father would supply farmer with water through an irrigation system which ran under a road brought action against contractor which broke the culvert while burying telephone cable along the road; defendant's exception of no cause of action was sustained and farmer appealed; court of appeal held farmer's damages would not have occurred in the absence of contract whereby his father had agreed to supply irrigation water so that father could not recover from the contractor), *cert. denied*, 337 So. 2d 225 (La. 1976); *Messina v. Sheraton Corp. of America*, 291 So.2d 829 (La. App. 4th Cir. 1974) (boxing promoter could not recover from hotel owner in contract for loss of revenue resulting from cancellation of boxing card because of injury sustained by boxer in his hotel room, even though hotel owner was negligent and knew of the contract relating to the boxing match); *Harp v. Pine Bluff Sand and Gravel Co.*, 750 So.2d 226, 229-30 (La. App. 3rd Cir. 1999) (in case applying maritime law, residents and business owners that used state-owned bridge damaged by barge

collision sued state and owner of tug and barges, alleging economic loss and inconvenience as a result of bridge being closed for repairs. Citing *Robins Dry Dock*, court of appeal held plaintiffs failed to allege sufficient proprietary interest to state cause of action for economic damages alone), *citing In re Clearsky Shipping Corp.*, 1999 WL 729251, 2 (E.D. La.1999) (J. Sear) (in case applying maritime law, court granted motion for summary judgment filed by plaintiff, which had filed a limitation proceeding after the allision of a vessel with a portion of the New Orleans Riverwalk shopping area, against several Riverwalk retail businesses and their property insurers who sought to recover business interruption losses allegedly sustained as a result of the allision based on *Robins Dry Dock*, because claimants lacked proprietary interest in premises that would permit recovery of economic losses); *Anderson v. T & D Machine Handling, Inc.*, 1996 WL 684449, 3 (E.D. La. 1996) (J. Duval) (court granted defendant's motion for summary judgment, denying claims by uninjured employees of printing company, who had sued for economic losses after defendant's forklift damaged a printing press, resulting in propane and carbon monoxide poisoning of the employees; employees had sued not for economic loss due to direct personal injury, but economic loss resulting in reduction in sales due to accident; court held defendant had no duty to avoid economic loss to uninjured employees of the person to whom the duty was owed (the employer)).

This Court notes the same policy consideration found within the maritime context and set forth in *Robins Dry Dock* would apply within a common law tort analysis, and a duty risk analysis under the Louisiana Civil Code. This Court notes the Louisiana Civil Code does not endorse, prohibit, or speak to the policy question at hand, as it does not address recovery for purely economic loss in any fashion. However, albeit within the context of maritime law, the Louisiana Supreme Court adopted the *Robin* policy determination with no additional discussion. The only Louisiana

Appellate Court to address the issue, the Louisiana Third Circuit in *Louisiana Crawfish Producers*, rejected the argument advanced by plaintiffs herein. Considering the foregoing, this Court concludes the Louisiana Supreme Court, when faced with this policy determination, would not permit the recovery sought by plaintiffs *whether this policy determination is couched in terms of one of the prongs of duty-risk analysis or within the prong of damages.* In short, this Court concludes whatever vehicle of analysis selected, the result would be the same. Approached from the standpoint of a "damages rule," the Court concludes that, as in *Louisiana Crawfish Producers Association,* plaintiffs do not have a proprietary interest in the property that was affected by the interstate's shutdown due to the blowout, nor did any plaintiff suffer a personal, physical injury as a result of the oil well blowout. The trend of cases approaching the issue from the standpoint of a "damages rule" have not permitted such recovery.

Approached from the standpoint of the duty-risk analysis, this Court concludes plaintiffs' argument that the requested economic damages resulting from the well blowout are within the scope of protection afforded by the defendant's duty to ensure that Interstate 10 would not be shut down due to their negligence is unpersuasive. This Court finds that under *any* prong of the duty-risk analysis – that is, whether the risk of harm breaches a duty, whether the risk of harm is outside the scope of the protection afforded, whether the risk of harm is foreseeable, or whether the damages are simply not permitted under the law of this state – the damages claimed by plaintiffs in this case cannot stand. This Court finds such liability to be, as *Robins Dry Dock* determined, too speculative in nature. Thus, this Court will give force and effect to the policy considerations set forth by both Louisiana state and federal courts, which have held the type of damages sought herein are too speculative in nature as to be allowed. As the Louisiana Supreme Court stated within the maritime

15

tort context in *PPG Industries, Inc.*:

> Moreover, imposition of responsibility on the tortfeasor for such damages could create liability "in an indeterminate amount for an indeterminate time to an indeterminate class". *Ultramares Corp. v. Touche,* 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931). If any of PPG's employees were laid off while PPG sought to obtain another source of fuel for its plant, they arguably sustained damages which in all likelihood would not have occurred *but for* defendant's negligence. If any of PPG's customers had contracted to purchase products that PPG could not produce and deliver because of the accident, perhaps they sustained damages which in all likelihood would not have occurred *but for* defendant's negligence. *Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages.* See James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Approach, 25 Vand.L.Rev. 43 (1972).[FN5]

*PPG Industries, Inc.*, 447 So.2d at 1061-62 (emphasis added).

This Court does not find today that the plaintiffs in this matter were not impacted. Indeed, this Court is cognizant of the impact on the businesses in question resulting from the closure of I-10. However, this Court must give force and effect to the policy considerations set forth by the courts in Louisiana that have considered the issue. Indeed, were this Court to permit claims for purely economic damages to go forward under these circumstances, could not an argument be made that anytime the interstate is closed due to an accident of any nature, those businesses along that span of the interstate, and all of their impacted suppliers, could seek economic damages occasioned by the interstate's closure on grounds those drivers owed a duty to those businesses located several miles away but along the interstate? The argument made by plaintiff's counsel could easily be translated into one, for example, that once a company "made the conscious decision" to place trucks carrying cargo on Interstate 10, defendants had a duty to protect the public from the foreseeable economic injury of shutting down Interstate 10 "in the event" of an accident where that cargo spilled and blocked travel on the interstate. This Court cannot envision a scenario, yet plaintiff's argument

would seem to embrace such a result.

Considering the foregoing, this Court concludes the magistrate judge reached the correct conclusion. The plaintiffs do not have a proprietary interest in any property that was damaged and have not alleged injuries either to themselves or their properties. Furthermore, this Court concludes any duty allegedly violated in the present case did not encompass the particular risk of injury sustained by plaintiffs and did not intend protection from the particular loss for which recovery is sought. Therefore, this Court concludes plaintiffs cannot recover on their state law claims for purely economic damages.

### D.    Article 667 of the Louisiana Civil Code

In their third amended and supplemental complaint, plaintiffs allege a claim under Article 667 of the Louisiana Civil Code.  Article 667 states:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

La. Civ. Code art. 667.

La. Civ. Code art. 667, by its language, entails the requirement of knowledge – knew or should have known – which raises the same policy considerations discussed above. The inferred aspect of strict liability found under the statute, in its modern incarnation, has been limited to the

"ultrahazardous activities" of pile driving or blasting with explosives; otherwise liability requires a showing of knowledge and negligence. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 48 (La. 2005), *cited in Barasich v. Columbia Gulf Transmission Co.* 467 F.Supp.2d 676, 689-90 (E.D.La. 2006). Even under its earlier form, which did not limit strict liability to actions involving ultrahazardous activities, the article required proof of both damage and causation to establish liability. *See Butler v. Baber*, 529 So.2d 374, 381 (La.1988). Causation under Article 667 must be a cause in fact, which the jurisprudence has interpreted as "it must have a proximate relation to the harm which occurs, and it must be substantial in character." *Barasich*, 467 F.Sup.2d at 690, *citing Butler*, 529 So. 2d at 378.

The crux of plaintiffs' Article 667 claim appears to be that the plaintiffs are "neighbors" of the land on which the well in question was drilled, and thus, they are entitled to relief under this code article, because plaintiffs were deprived of the liberty of enjoying their own property and were damaged by the well blowout.

The Louisiana Supreme Court has not declared whether parties similarly situated to the plaintiffs should be considered "neighbors" under Article 667. The magistrate judge concluded plaintiffs are not "neighbors" as that term is used in Article 667, noting "words are to be taken in their ordinary meaning and understood in their normal sense in connection with the context." LA. CIV. CODE art. 11; *Succession of Doll v. Doll*, 593 So.2d 1239, 1249 (La. 1992); *Wood Marine Service, Inc. v. Board of Com'rs For East Jefferson Levee Dist.*, 653 F.Supp. 434, 445 (E.D. La.1986). The magistrate judge noted that in its ordinary meaning, "neighbor" is a person who lives near another. Black's Law Dictionary (8 ed. 2004). The magistrate judge also relied on two cases – a federal district court case from the Eastern District of Louisiana and the *Louisiana Crawfish*

*Producers* case – in support of his position. In the federal district court case – *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676, 690 (E.D. La. 2006) (J. Vance) – nine residents, businesses and property owners located along 17 parishes off the Louisiana coast filed suit and alleged defendant oil companies' activities contributed significantly to Hurricanes Katrina's and Rita's destructive impact by damaging Louisiana's marshland. Judge Vance observed Article 667 does not contemplate the "neighbor" relationship plaintiffs asserted, where much of the properties owned by the plaintiffs were hundreds of miles apart.

In the instant case, the magistrate judge specifically relied on the following language in Judge Vance's opinion in support of his conclusion:

> If these parties could be held to be neighbors, the restrictive meaning of the statutory language would be eviscerated. Louisiana Civil Code article 11 requires courts, when interpreting the meaning of statutes, to give the words "their generally prevailing meaning." Plaintiffs have not suggested, and the Court is not aware of, any generally prevailing meaning of "neighbor" that could possibly apply to the relationship between a homeowner in Iberia Parish and an exploration company that dug a canal near the mouth of the Mississippi River.... Plaintiffs' Article 667 claim fails because they do not demonstrate that the "neighbor" referred to in Article 667 could be a party whose property is physically remote from that of the defendants.

*Barasich*, 467 F.Supp.2d at 690. *See also Louisiana Crawfish Producers*, 935 So. 2d at 385 (Third Circuit concluded plaintiffs did not have cause of action under Article 667 as persons holding rights derived from the landowner).

Plaintiffs contend the magistrate judge's "*Erie* guess" with respect to their Article 667 claim is erroneous, arguing they should be considered "neighbors" for purposes of Article 667. First, plaintiffs argue the magistrate judge did not apply the appropriate "codal analysis required under *Erie*," without specifying what "codal analysis" should have been applied. Additionally, plaintiffs argue several of the businesses affected should be considered "neighbors" of the well as they are

located sufficiently close to the well site. The well blowout occurred near the Ramah exit off the interstate, and plaintiffs argue the putative class members include businesses serviced by the same interstate exit as the well blowout, as well as businesses at the immediate next exits, both east and west, from the well blowout site.

Notwithstanding the foregoing argument, the record in this case shows nine of the ten representative businesses are located in Breaux Bridge, Louisiana, approximately twenty miles from the well blowout site, and the named plaintiffs seek to represent *all* businesses that suffered any damages from the well blowout, regardless of their proximity to the well. Certainly, this Court concludes the businesses located twenty miles away are not "neighbors" as contemplated by Article 667.

In *Barasich*, which was also before that court on a Rule 12(b)(6) motion to dismiss, the court stated:

> Plaintiffs' Article 667 claim *fails because they do not demonstrate that the "neighbor" referred to in Article 667 could be a party whose property is physically remote from that of the defendants.*

467 F.Supp.2d at 690 (emphasis added). Similarly, in this case, it would seem plaintiffs have not demonstrated whose property is physically adjacent, closely adjacent or remote from the well site. Indeed, it seems the majority of putative class members could *not* be entitled to relief under Article 667 by their location alone.

However, of greater moment, the plaintiffs' reliance on Article 667 appears to be misplaced under the facts of this case, in addition to their failure to carry their burden as to location in the face of the movants evidence on that issue. Article 667 contemplates that a proprietor of land may not make "any work on it" – that is, *on the proprietor's land*, which deprives *his neighbor* of the liberty

20

of enjoying *his own property* or causes any damage *to his neighbor*. Here, plaintiffs do not allege the work done by the defendants damaged plaintiffs' *lands*. Rather, plaintiffs allege the work done by the defendants *damaged land that is adjacent to defendants' land* – that is, the interstate, which is owned by neither the plaintiffs nor the defendants (this land presumably is owned by a state or federal agency). It is the "damage" to this property that sits adjacent to the well – the interstate itself – that plaintiffs allege caused damage to the "neighbors" of *that* property – i.e. the businesses which are adjacent to *Interstate 10*. Under this argument, the same possibility of unlimited recovery and liability which defined the policy determination under the tort analysis could apply. La. Civ. Code art. 667 should not be read to create a domino effect granting rights of recovery to neighbors of neighbors. Here, the "neighbor" who might argue recovery under La. Civ. Code art. 667 is the "owner" of Interstate 10, and not those businesses who might have been impacted by alleged damage to Interstate 10 from defendant's work on defendant's land. Thus, a literal reading of Article 667 leads this Court to conclude the impacted "neighbor" in this matter is actually the interstate itself, not the "neighbors" of that "neighbor." Under Article 667, the interstate – as the "neighbor" to the damaged well – could, potentially, have a cause and/or right of action for damage to itself caused by the acts of the defendants on their land. However, the plaintiffs, who are one step removed from defendant's land are not afforded a claim under Article 667.

Moreover, even if the plaintiffs could demonstrate that all members of the putative class are close enough in proximity to be considered "neighbors' for purposes of Article 667, and that "neighbors" of "neighbors" should have a right of recovery, there is still the hurdle of proving causation under, in effect, a negligence analysis as required by Article 667 as amended, which would embrace the same policy consideration noted above, albeit now couched under the knowledge aspect

of Article 667 and therein, couched within the rubric of proximate cause and reasonable care. Although this Court could envision that the policy considerations would be different for true "neighbors," this Court has already found plaintiffs have not carried their burden of showing which of the businesses in question are located close enough to the well in order to be considered "neighbors" under Article 667, and that "neighbors" of "neighbors" do not fall within the protection of La. Civ. Code art 667.

Considering the foregoing, this Court concludes the magistrate judge's "*Erie* guess" with respect to plaintiffs' Article 667 claim was not erroneous, and plaintiffs do not state a claim against defendants under Article 667 of the Louisiana Civil Code.

## II.    Conclusion

Considering the foregoing,

IT IS HEREBY ORDERED that the findings of the magistrate judge are AFFIRMED. This Court concludes plaintiffs fail to state a claim against the defendants under either Louisiana tort law or Article 667 of the Louisiana Civil Code.

IT IS FURTHER ORDERED that the motions to dismiss are GRANTED, and all of plaintiffs' claims against all defendants named herein are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____2_____ day of February

~~January,~~ 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

22